UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

LAUREL GARDENS, LLC, et al.,

    Plaintiffs,

v.                                                             Civil No. 2:18cv210

MJL ENTERPRISES, LLC,

    Defendant.

## MEMORANDUM ORDER

This matter is before the Court on a motion to dismiss filed by defendant MJL Enterprises, LLC ("MJL") pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 60. MJL alleges that the Amended Complaint, originally filed in the Eastern District of Pennsylvania by Laurel Gardens, LLC, American Winter Services, LLC, Laurel Garden Holdings, LLC, LGSM, GP, and Charles P. Gaudioso (collectively, "Plaintiffs"): (1) is barred by a settlement agreement from a prior case litigated in this Court; and (2) alternatively fails to state a claim upon which relief can be granted. Id.

### A. Factual and Procedural Background

On March 9, 2015, in a previous civil action filed in this Court, MJL filed a complaint against Laurel Gardens, LLC ("Laurel Gardens"), raising claims related to a contract awarded to MJL under the New Jersey Department of Transportation's "Good

Neighbor Planting Program." Case No. 2:15cv100, ECF No. 34-1, at 1. Less than a week later, Laurel Gardens filed suit against MJL in New Jersey similarly raising claims associated with the Good Neighbor contract. Id. On May 6, 2016, Laurel Gardens and MJL entered into a global settlement agreement ("Settlement Agreement") with respect to both the "Virginia litigation" and the "New Jersey litigation." Id. The Agreement, which was filed on the docket of this Court, states in pertinent part:

> The Parties agree to mutually release each other for all claims and disputes, asserted or un-asserted and arising out of, any acts, failures to act, omissions, misrepresentations, facts, events, transactions, or occurrences described in either the Virginia litigation or the New Jersey litigation, or otherwise related to the Good Neighbor contract.

Id. at 2-3. The Settlement Agreement further provides that Virginia law governed the parties' rights and duties and that the parties "consent[] to the jurisdiction of [this Court] with respect to any further litigation or dispute between the Parties, whether related or unrelated to this Agreement, the New Jersey litigation, the Virginia litigation, or the Good Neighbor contract." Id. at 4-5.

On April 21, 2017, the instant civil action was filed in the Eastern District of Pennsylvania by Laurel Gardens, and several associated plaintiffs, against MJL and more than thirty other named defendants. ECF No. 43. Multiple motions to dismiss were filed by various defendants in that case, with MJL

2

seeking dismissal under Rule 12(b)(6) and alternatively requesting that the case against it be severed and transferred to this Court in light of the fact that the Plaintiffs' factual allegations were associated with the Good Neighbor contract and were therefore covered by the terms of the prior Settlement Agreement. ECF No. 60. Although the district judge in Pennsylvania denied the various defendants' Rule 12(b)(6) motions to dismiss, he granted MJL's alternative request, and "sever[ed] Plaintiffs' claims against MJL," transferring them to this Court with the express clarification that such ruling "does not address the merits of MJL's motion to dismiss for failure to state a claim." ECF No. 146, at 6 n.2. Subsequent to such transfer, no party has filed a motion, brief, or any other document in this Court relating to the merits of MJL's pending motion to dismiss. Such motion is therefore ripe for review.

### B. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint, or a claim within a complaint, based on the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion to dismiss must be analyzed in conjunction with Federal Rule of Civil Procedure 8(a), thus requiring that a complaint allege sufficient facts to render a claim "plausible on its face" and "raise a right to relief above the speculative level on the

assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007) (internal citations omitted).

In assessing the plausibility of a claim, a district court may "consider documents attached to the complaint, see Fed. R. Civ. P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). Additionally, the court may take judicial notice of matters of public record relevant to an affirmative defense if such defense clearly appears on the face of the complaint. Id. Judicial notice is permissible when a fact can be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201.

Here, MJL's affirmative defense seeks to rely on the release that was entered as part of a negotiated settlement of the prior case in this Court, and such prior case is referenced in Plaintiffs' amended complaint. See ECF No. 43 ¶ 219 (identifying the prior Virginia lawsuit between MJL and "the Company," to include a reference to the date such previous lawsuit was filed). MJL's reliance on the release executed in that case is procedurally similar to raising a defense of "res judicata," a defense that the Fourth has addressed as follows:

> [The plaintiff] also argues that Rule 12(b)(6) dismissal of his lawsuit on the basis of res judicata

4

was procedurally inappropriate because the defense of res judicata was not clearly established by the affirmative allegations of the complaint. We disagree. This Court has previously upheld the assertion of res judicata in a motion to dismiss. See Thomas v. Consolidation Coal Co., 380 F.2d 69, 75 (4th Cir. 1967). Although an affirmative defense such as res judicata may be raised under Rule 12(b)(6) "only if it clearly appears on the face of the complaint," Richmond, Fredericksburg & Potomac R. Co. v. Forst, 4 F.3d 244, 250 (4th Cir. 1993), when entertaining a motion to dismiss on the ground of res judicata, a court may take judicial notice of facts from a prior judicial proceeding when the res judicata defense raises no disputed issue of fact, see Day v. Moscow, 955 F.2d 807, 811 (2d Cir. 1992);[1] Scott v. Kuhlmann, 746 F.2d 1377, 1378 (9th Cir. 1984); Briggs v. Newberry County Sch. Dist., 838 F. Supp. 232, 234 (D.S.C. 1992), aff'd, 989 F.2d 491 (4th Cir. 1993) (unpublished). Because [the plaintiff] does not dispute the factual accuracy of the record of his previous suit against [the defendant] in [his] official capacity, the district court did not err in taking judicial notice of this prior case.

Andrews v. Daw, 201 F.3d 521, 524 n.1 (4th Cir. 2000).

## C. Discussion

The Settlement Agreement between Laurel Gardens and MJL became a public record when filed on this Court's docket approximately nine months before Plaintiffs filed their complaint in Pennsylvania district court. Case No. 2:15cv100, ECF No. 34-1. Directly contrary to Plaintiffs' assertion that "Defendants . . . have not asked this Court to consider the settlement agreement under any evidentiary standard (e.g.

---

[1] In Day, the Second Circuit held that the affirmative defense of res judicata is properly addressed through a Rule 12(b)(6) motion "when all relevant facts are shown by the court's own records, of which the court takes notice." Day, 955 F.2d at 811. Similarly, here, the release at issue is found within this Court's "own records."

5

judicial notice)" ECF No. 91, at 42, MJL's Rule 12(b)(6) motion expressly asserts that "Pursuant to Federal Rule of Evidence 201, the Court may take judicial notice of the Settlement Agreement & Mutual Release, a copy of which was filed with the United States District Court for the Eastern District of Virginia," ECF No. 60, at 3 n.1. Furthermore, Plaintiffs do not dispute the factual accuracy of the public docket containing the release. There being no valid reason to disregard the existence or contents of such public document, a document executed by Laurel Gardens close in time to the filing of the instant suit, this Court takes judicial notice of such court record. See Clark v. BASF Salaried Employees' Pension Plan, 329 F. Supp. 2d 694, 697 (W.D.N.C. 2004) (collecting cases).

Having taken judicial notice, the Court separately finds that nothing in the record, even unproven facts proffered in opposition to dismissal, call into question the validity and/or enforceability of the release contained in the jointly executed Settlement Agreement. While Plaintiffs ostensibly attack the MJL Settlement Agreement in their omnibus response in opposition to fifteen discrete motions to dismiss filed by various defendants in Pennsylvania, their attack is ineffective on its face, as it broadly contends that unspecified "Defendants" breached the settlement agreement attached to such defendants' motions, yet fails to offer even a broad description of the

6

alleged breach, does not identify any breached contractual terms, and fails to even outline at a macro level when or how such agreement was purportedly breached, or even which named party breached it. ECF No. 91, at 42-44. In questioning the enforceability of the unidentified settlement agreement(s), Plaintiffs instead advance the speculative assertion that, through discovery, they will demonstrate that unspecified defendants (presumably including MJL) breached their settlement agreement(s). <u>Id.</u> at 42. Additionally, Plaintiffs vaguely reference "correspondence of Charles Brown, esquire" as evidence documenting a breach of the settlement agreement(s), noting that such correspondence is attached as an exhibit to Plaintiffs' brief, <u>Id.</u> at 43; however, <u>no such exhibit</u> is attached by Plaintiffs.[2]

In response to such vague allegations, MJL's reply brief reports a complete lack of knowledge regarding any alleged breach of the MJL Settlement Agreement, and expressly questions whether the Plaintiffs' vague references to "certain Defendants" seeking to enforce a breached settlement agreement even refers to MJL, as contrasted with one of the other thirty-plus named

---

[2] Plaintiffs' vague reference to such correspondence does not identify MJL as the breaching party, nor does it provide any further detail about the alleged breach. Out of an abundance of caution, and to ensure that no documents were misplaced through transfer, this Court reviewed the electronic docket for the Eastern District of Pennsylvania, but the referenced exhibit was also not filed on that court's docket. Case No. 5:17cv570, ECF No. 91.

7

defendants with whom Plaintiffs may have executed a different settlement agreement prior to filing suit in Pennsylvania district court. ECF No. 95, at 2. Subsequent to MJL taking such position, Plaintiffs did not request leave to file a sur-reply in Pennsylvania, or in this Court subsequent to transfer, instead resting on their vague assertion that "certain Defendants" breached unidentified release agreements in unspecified ways. Accordingly, on these unique facts where Plaintiffs have offered such a vague response that it cannot be determined whether it is even directed at MJL, the current record fails to reflect a factual dispute as to whether the MJL Settlement Agreement is enforceable. Cf. Jared & Donna Murayama 1997 Tr. ex rel. Murayama v. NISC Holdings, LLC, 82 Va. Cir. 38 (2011), aff'd sub nom. Jared & Donna Murayama 1997 Tr. v. NISC Holdings, LLC, 284 Va. 234, 727 S.E.2d 80 (2012) (granting the defendant's demurrer after a settlement agreement was advanced through a motion craving oyer, noting that "[a] valid release completely bars litigation of the waived claims," and finding that it was "undisputable" that the settlement before the court "constitutes a valid release," further finding that the plaintiff "has failed to advance a valid defense to set aside the Settlement release").

In the final section of the portion of Plaintiffs' brief that ostensibly responds to MJL's dismissal motion, Plaintiffs

8

argue that the terms of the Settlement Agreement do not bar Plaintiffs' current claims because such claims did not accrue until after the Settlement Agreement was executed, further noting that Pennsylvania law precludes application of the Agreement's release to unaccrued claims. Rather than advancing Plaintiffs' position, such statements appear to further indicate that Plaintiffs must be referring to a settlement agreement involving a party <u>other than</u> MJL as: first, Pennsylvania law does not appear applicable in light of the express and unambiguous Virginia choice of law provisions clearly set forth in the MJL Settlement Agreement; second, and even more telling, Plaintiffs' contention that the claims advanced in the Pennsylvania lawsuit were "unaccrued" factually conflicts with Plaintiffs' own timeline of events, as the MJL Settlement Agreement was executed in <u>May of 2016</u>, and Plaintiffs expressly assert that their current claims "accrued in <u>February 2016</u>, after discovery of the conspiracy through forensic analysis." ECF No. 91, at 45 (emphasis added); and third, Plaintiffs' alternative assertion that "the Defendants" were "additional parties to the settlement agreement" and cannot enforce such agreement for lack of consideration further illustrates the factual disconnect, as MJL was <u>a signatory</u> to the Settlement Agreement at issue in this case.[3]  <u>Id.</u>

---

[3] A mutual release of affirmative claims advanced in competing lawsuits

9

In sum, the relevant section of Plaintiffs' brief in opposition to dismissal is so broadly worded, including the reference to the "settlement agreement attached to certain Defendants' motion to dismiss," id. at 42 (emphasis added), that it is unclear whether such brief is even referring to the Settlement Agreement between Laurel Gardens and MJL. Even assuming that it is referring to the MJL Settlement Agreement, Plaintiffs: (1) overlook MJL's express request that this Court take judicial notice of such Agreement; (2) offer a vague response in opposition based on "correspondence" that is neither described in Plaintiffs' brief or attached thereto; (3) offer the nebulous assertion that discovery is needed to prove that the unidentified Settlement Agreement is unenforceable; (4) make no reference to MJL, Virginia law, or any of the actual terms of the MJL Settlement Agreement; (5) misstate MJL's status as a signatory to such Settlement Agreement; and (6) offer a legal defense that fails on its face because it is disproven by Plaintiffs' own timeline as to when the instant claims accrued. Therefore, for the reasons argued by MJL, the MJL Settlement

---

plainly constitutes valid consideration. See, e.g., Freedlander, Inc., The Mortg. People v. NCNB Nat. Bank of N. Carolina, 706 F. Supp. 1211, 1215 (E.D. Va. 1988); Knight v. Docu-Fax, Inc., 838 F. Supp. 1579, 1581 n.5 (N.D. Ga. 1993).

Agreement is properly before the Court and Plaintiffs' tenuous arguments against its enforceability fail on their face.[4]

"Like the terms of any contract, the scope and meaning of a release agreement," absent ambiguity, "is governed by the intention of the parties as expressed in the document they have executed." Berczek v. Erie Ins. Grp., 259 Va. 795, 799, 529 S.E.2d 89, 91 (2000).[5] Here, Laurel Gardens and MJL executed a written settlement that unambiguously releases them both from "all claims and disputes, asserted or un-asserted and arising out of, any acts, failures to act, omissions, misrepresentations, facts, events, transactions, or occurrences described in either the Virginia litigation or the New Jersey litigation, or otherwise related to the Good Neighbor contract." Case No. 2:15cv100, ECF No. 34-1, at 2-3. The face of Plaintiffs' amended complaint filed in this case establishes that the newly advanced causes of action against MJL arise

---

[4] This Court is "mindful that judicial notice must not be used as an expedient for courts to consider 'matters beyond the pleadings' and thereby upset the procedural rights of litigants to present evidence on disputed matters." Goldfarb v. Mayor & City Council of Baltimore, 791 F.3d 500, 511 (4th Cir. 2015) (internal quotation marks and citation omitted). That said, here, MJL has pointed to a duly executed release recently entered in this Court in a prior case addressing the precise same claims at issue in this case, and Plaintiffs have offered a facially inadequate response to MJL's invocation of the express protections afforded by such release. Were this Court to refuse to enforce the terms of the release based on vague opposition that firmly suggests that Plaintiffs are referring to a different release executed <u>by a party other than MJL</u>, no release entered in federal court would ever insulate a party from the burdens/expense of future federal litigation.

[5] This Court applies Virginia law based on the express choice-of-law provision in the Settlement Agreement. Case No. 2:15cv100, ECF No. 34-1, at 4-5.

11

almost exclusively out of events related to the Good Neighbor contract. ECF No. 43 ¶¶ 205-19. Moreover, to the extent that an additional claim against MJL appears to be unrelated to such contract, the face of the amended complaint reveals that such claim still falls within the scope of the release as it arises out of acts/facts/events described in the Virginia litigation.[6] Id. Therefore, the affirmative defense advanced by MJL is apparent from the facts alleged on the face of the complaint (that is, Plaintiffs' own factual assertions plainly demonstrate that the claims fall within the scope of the release) thus barring litigation of such claims in this action.

---

[6] Plaintiffs contend that MJL is liable to Plaintiffs based on "salt contracts" that MJL entered into with another defendant named in the Pennsylvania case (Tim McKenna). MJL's filings in support of dismissal assert that such matters still fall within the scope of the release, ECF No. 60, at 10, and Plaintiffs do not contest such representation. That said, MJL at one point in its briefing labels the salt contract allegations as "new material allegations" not raised in the prior lawsuits, id. at 6-7, and notwithstanding Plaintiffs' silence on this issue, this Court deemed it necessary to review the cited public records from the prior suit to ensure that there is no plausible claim that the salt contracts fall outside of the scope of the release. A review of Laurel Gardens' "Answer and Counterclaim" in the prior Virginia Litigation conclusively resolves such issue, as Laurel Gardens expressly alleged in that case both that MJL was "doing business with Tim McKenna . . . in connection with the purchase of industrial road salt," and that "Tim McKenna has stolen and or embezzled hundreds of thousands of dollars-worth of goods, services and cash from [Laurel Gardens] and/or its affiliated companies." Case No. 2:15cv100, ECF No. 27, at Counterclaim ¶¶ 12-13 (emphasis added). Accordingly, to the extent that Plaintiffs now assert that MJL purchased salt from Tim McKenna with knowledge that such salt actually belonged to Plaintiff American Winter Services (and not Tim McKenna), ECF No. 43 ¶¶ 199, 221-24, such allegations are plainly within the scope of the release as they constitute previously "un-asserted" claims "arising out of, any acts . . . facts, events, transactions, or occurrences described in . . . the Virginia litigation." Case No. 2:15cv100, ECF No. 34-1, at 2-3.

## D. Conclusion

For the reasons set forth herein, the Court **GRANTS** MJL's motion to dismiss the Amended Complaint as to all claims against MJL that are before this Court.[7] ECF No. 60.

The Clerk is **REQUESTED** to send a copy of this Memorandum Order to all counsel of record.

**IT IS SO ORDERED.**

/s/ Mark S. Davis
Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
July 18, 2018

---

[7] It remains unclear to this Court why any claims against MJL were transferred to this Court based on what appears to be a "permissive" contractual waiver of the right to challenge this Court's jurisdiction, as contrasted with a mandatory venue clause. Case No. 2:15cv100, ECF No. 34-1, at 4-5; cf. IntraComm, Inc. v. Bajaj, 492 F.3d 285, 290 (4th Cir. 2007). That said, none of the Plaintiffs have sought reconsideration of the transfer order or otherwise advanced a post-transfer challenge to venue and/or jurisdiction in this Court. This Court further recognizes that all of the various Plaintiffs' claims against MJL were transferred to this Court, yet Laurel Gardens is the only Plaintiff that executed the release relied on by the Pennsylvania court to effectuate such transfer. Based on the current record, the legal relationship between the Plaintiffs is unclear, but the various Plaintiff business entities not only share the same legal address, they collectively identify themselves in the amended complaint as: "the Company." ECF No. 43, at 2-3. Notwithstanding the lack of clarity in the record on this issue, because the only legal basis for the transfer of <u>all</u> of "Plaintiffs' claims" against MJL from Pennsylvania to this Court is the jurisdictional waiver contained in the MJL Settlement Agreement, to the extent any Plaintiff is not legally bound by the terms of the settlement agreement (a claim Plaintiffs <u>failed to raise</u> in Pennsylvania or in this Court), such Plaintiff's claims are alternatively dismissed based on improper venue.